**UNITED STATES of America**

v.

**John CINCOTTI, William Kazonis, and Jason Angiulo, Defendants.**

**Crim. No. 84–293–K.**

United States District Court,
D. Massachusetts.

July 31, 1987.

Barry M. Haight, Paul Buckley, Buckley, Haight, Muldoon, Milton, Mass., Richard M. Egert, Willie Davis, Davis and Robinson, Joseph J. Balliro, Frank Mondano, Balliro, Mondano & Balliro, William G. Talis, Law Offices of William G. Talis, Robert Sheketoff, Edward J. Sweeney, Francis Dimento, Dimento & Sullivan, Boston, Mass., for defendants.

John Voorhees, U.S. Atty., for U.S.

## MEMORANDUM

KEETON, District Judge.

Defendants filed in the Court of Appeals, and thereafter, pursuant to an order of that court, presented to this court a Motion for New Trial (Docket No. 611) based on allegations that the government acted in bad faith in asserting at trial a privilege to withhold details regarding placement of listening devices at 98 Prince Street and 51 North Margin Street.

## I.

After hearing extensive arguments on the asserted privilege at trial, I sustained the assertion of a qualified privilege of nondisclosure in the circumstances of this case based on the compelling governmental interests in the secrecy of techniques of investigating clandestine illegal activities.

Defendants contended at the time, and reiterate the contention now, that the court should at least have required the government to disclose where the listening devices were located on two-dimensional diagrams of the 98 Prince Street first-floor apartment and the 51 North Margin upstairs area. Defendants argue that the absence of disclosure of the location of the devices hindered cross-examination of government witnesses and impaired the defendants' ability to present to the jury their contentions that persons shown to have been present, including the defendants on trial in this case, did not participate in or hear particular incriminating conversations recorded through the different listening devices.

For the purpose of fashioning an order that protected the legitimate interests underlying the qualified governmental privilege of nondisclosure of details of investigative techniques but in a way least likely to be intrusive upon other legitimate interests, and in particular in a way that would protect the defendants' interest in confrontation of witnesses and in challenging inferences to be drawn from evidence, the court gave an instruction to the jury as follows:

> Members of the jury, the defendants in this case have sought to establish the location of the microphones both at 98 Prince Street and 51 North Margin Street. The Government has elected to decline to furnish that information and claims a privilege not to do so. I have ruled that such a privilege exists; and you may draw such inferences, if any, as you may consider reasonable from the absence of evidence before you as to the specific location of the microphones.

Tr.Vol. 49, August 1, 1986, p. 147.

The qualified privilege asserted by the government was subsequently recognized

and explained in *United States v. Cintolo*, 818 F.2d 980 (1st Cir.1987).

## II.

Defendants now contend that, even if the court's rulings on this matter during trial were justified as matters stood at that time, a new trial should be granted now because of

> newly discovered evidence revealing that the government acted in bad faith in its refusal to disclose the location of the microphones employed in this case.

Defendants' Motion for New Trial (Docket No. 611).

The supporting Affidavit of Counsel (Docket No. 613) calls attention to an article in the *Boston Globe* of Sunday, April 5, 1987, entitled "FBI bug marked beginning of end for Hub's Mafia leaders," prepared by a *Globe* Spotlight Team. At page 31, the article reported, in relation to 98 Prince Street:

> Resuming their work, they wired the microphones to power cells the size of fireplace logs and carefully placed them above the dropped ceiling tiles. The installers made sure that the heavy units were safely in place. Their concern was that the ceiling could collapse under their weight, and the units would crash into Angiulo's lap. If that happened, the bugging operation would collapse too. They stuffed mounds of insulation around the power units, the idea being to make it as hard as possible for anyone to find the three power packs. In this case, there would not be any hookup to a telephone or electrical line, not after the Anguilos caught wind of their past efforts to use the two utility companies to supply power for a bug and camera. They had learned their lesson not to go outside the agency. The buzzword was self-reliance. The risk of having to reenter the apartment every 30 days to replace the drained power units was determined to be less than the risk of a leak from outsiders.

The affidavit of counsel then states:

In my opinion it is obvious from reading this article and the others in the series that both the FBI and Strike Force cooperated with the *Globe* Spotlight Team. In my opinion from reading the articles it is clear that the information recited ... above [from page 31 of the *Globe*] was disclosed to the *Globe* by either the FBI, the Strike Force, or both.

Affidavit of Counsel at para. 3.

The affidavit of counsel also calls attention to an article in the *Globe* of April 7, 1987, at page 10, containing the following:

Angiulo turned up the TV even louder than usual and lowered his voice. It was 9:29 a.m. and one of the two FBI microphones was hidden directly above the two men.

*Id.* at para. 5.

### III.

Serious potential problems are presented by the practice, all too common among the bar of this and other courts, of submitting an affidavit of counsel as a way of presenting a factual proffer to the court. I conclude, for reasons stated below, that a more appropriate form of submission would not have affected the outcome in this case, and for that reason I merely call attention to and do not dwell on some of those problems.

■ The statements of the opinions of the affiant must be disregarded. They are not within the scope of opinions the affiant is competent to express as a witness, *see* Fed.R.Evid. 602 and 701, and are not within the scope of arguments an advocate is permitted to make, *see* Mass.S.J.C. Rule 3:07, DR 7–106(C)(4), applicable to counsel appearing in this court under District of Massachusetts Rules 5(a), 5(d)(4), and 6 (1986).

As to those statements which are not opinions of the affiant, apart from potential complications arising when an attorney becomes a witness, *see id.*, DR 5–102, it may be doubted that the affidavit of counsel can properly be received, under applicable rules of evidence, as proof of the truth of any statement in the affidavit submitted in this case. I conclude, however, that I need not address such issues in this instance, be-

cause the government does not dispute that the articles referred to in the affidavit and proffered to the court were in fact published in the *Globe*. Thus, no issue of authenticity is presented and issues as to the purposes for which the articles may properly be considered by the court—discussed below—are not affected by the manner in which the articles have been brought to the court's attention.

### IV.

Defendants have correctly observed that the precedents recognizing the qualified governmental privilege of nondisclosure asserted here have reasoned that the privilege is analogous to the privilege of nondisclosure of the identity of a government informant, the scope of which is defined in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny. These precedents require a weighing of the compelling governmental interests in comparison with compelling interests of defendants in access to information that might in some way be useful in defense. The scope of the qualified privilege is fashioned with the aim of serving the governmental interests in a way least likely to have any adverse effect on defendants' interests.

### V.

Defendants now challenge the good faith of the government's assertion of the qualified privilege in this case and charge that "the *Globe* article now makes abundantly clear" that the assertion of the privilege "was a fraud on the [c]ourt" because "there was no sensitive investigative technique to protect...." Defendants' Memorandum (Docket No. 612) at 3–4. Citing *Roviaro* and *United States v. Ariza–Ibarra*, 651 F.2d 2, 5–13 (1st Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981), defendants argue:

The equivalent conduct in that context [of nondisclosure of an informant's identity] would be claiming an informant's privilege as to information sought by the

defense when in fact no informant existed.

Defendants' Memorandum at 5.

The defendants' argument that disclosure of location on a two-dimensional diagram would disclose nothing about investigative technique must be rejected. Such a disclosure would have been very likely to disclose, at the least, whether the location was in the walls or instead in the ceiling or floor. That disclosure would in turn give significant clues as to how one engaged in clandestine criminal activity might better focus efforts in the future to guard against effective surveillance and detect it whenever it might be attempted. *Cf. United States v. Cintolo, supra,* 818 F.2d at 1001–03. Thus, the analogy to claiming an informant when none existed is plainly not apt.

In their *Further Memorandum in Support of Motion for New Trial* (Docket No. 620), defendants argue that the *Globe* articles disclose the following things about the electronic surveillance:

(1) That the microphones were wired to power cells.

(2) That there were three power packs.

(3) That the units were heavy.

(4) That the power cells were the size of fireplace logs.

(5) That the units were placed above the dropped ceiling tiles.

(6) That there was no need to use a hook-up with electrical or telephone lines.

(7) That the power units would drain in 30 days and have to be replaced.

(8) That one of the two microphones was hidden directly above Gennaro Angiulo and Richie Gambale when they spoke at 9:29 p.m. on March 19, 1981, about killing LaFreniere.

*Id.* at 4–5. With respect to Gennaro Angiulo and Richie Gambale's March 19, 1981 conversation, defendants then argue:

Thus, assuming that those defendants could remember where they were in the apartment at that time, the *Globe* article

would, in effect, have informed them of the location of one of the microphones. *Id.* at 5. In a footnote, defendants add:

Depending on that location, and given that the government had disclosed at trial that the microphones were 12 to 15 feet apart, the *Globe* article may have disclosed to them the location of both microphones.

The tape of this particular conversation was the only tape played for the jury on only one channel as opposed to in stereo.

*Id.* at 5 n. 1.

■ Even if it were assumed, contrary to the government's contention, that the items alleged by defendants to be disclosures of facts about the nature and location of the listening devices were in fact disclosures by government agents rather than speculations or inferences drawn by *Globe* writers and, with journalistic license, reported as fact, still such disclosures occurring in the spring of 1987 provide only very weak support for a further inference that the government attorneys and agents, at the time of trial in the summer of 1986, were acting in bad faith in asserting a qualified privilege of nondisclosure on grounds that this court determined to be valid—a determination which also has been made in like circumstances by higher courts, both before and after the decision of this court during trial of this case. *Cf. United States v. Cintolo, supra; United States v. Van Horn,* 789 F.2d 1492, 1507–08 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986); *United States v. Harley,* 682 F.2d 1018, 1020 (D.C.Cir.1982). Thus, as the record now before me stands, including all the affidavits and supporting exhibits filed in support and in opposition to the Motion for New Trial, and taking all the defense affidavits into account as if there were no valid evidentiary objections to them, I do not find that any of the government agents and attorneys acted in bad faith in asserting the qualified privilege in this case.

## VI.

The defendants have, however, asserted that they have been disabled from offering

evidence of bad faith because such evidence as may exist is under the exclusive control of the government. They argue that in these circumstances the court should allow an evidentiary hearing. By implication, if not explicitly, defendants seek an opportunity to examine government agents at least, and perhaps government attorneys as well, to inquire into their motives and good faith in asserting the qualified governmental privilege for nondisclosure of investigative technique in the circumstances of this case.

Defendants argue, first, that in deciding this motion and the associated request for an evidentiary hearing this court should apply the standard formulated in *Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974) (restriction on scope of cross-examination of key identification witness, who was a juvenile, to prohibit inquiry into witness' probation status, from which jurors appropriately could have drawn inferences relating to witness' possible bias and prejudice, violated right of effective cross-examination). In the alternative, they argue that the court should apply a harmless-error standard such as that stated in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3380–81, 3382 n. 9, 87 L.Ed.2d 481 (1985) and *United States v. Street*, 570 F.2d 1, 4 (1st Cir.1977). *See also United States v. Mastroianni*, 749 F.2d 900, 912–13 (1st Cir.1984). For reasons stated below, I conclude that I need not resolve issues regarding which of the various standards regarding burdens of production and proof, developed in different contexts, should be applied to the issues presented by this motion for new trial. Even under the formulations most favorable to the defendants, neither the motion for new trial nor the request for an evidentiary hearing can properly be granted in this case.

## VII.

■ I turn first to the defense motion for new trial. The motion now before me is based on the premise that cross-examination of government witnesses and arguments to the jury about inferences, founded on the taped conversations received in evidence could have been more effective if the information now known about placement of the listening devices had been known to defense counsel in time for use in cross-examination and in argument to the jury. I conclude that this contention is not supportable in the specific context of the evidence and the material issues in this case.

No suggestion has been advanced that information about the size and nature of the listening devices would have been useful in relation to the issues in this trial in any way other than such value as that information might have had in providing clues to likely location of the devices on a two-dimensional plane. The argument that location on a two-dimensional plane would have been useful is founded on the suggestion that this information would have enabled each defendant to offer argument, and perhaps even to offer his own testimony, as to his being so located in the room at the time of a particular conversation that his voice could not have been one of the recorded voices or that he could not have heard a speaker whose voice was recorded.

Insofar as this suggestion relates to arguments to be made from the evidence, I conclude that the limiting instruction allowed each defendant the advantage of every such argument and more. Some among the plausible arguments to the jury for reasonable doubts that were not foreclosed by the evidence would have been either destroyed or weakened by credible evidence about the precise location of the listening devices. No argument for reasonable doubts would have been strengthened by reference to evidence about the precise locations because under the instruction, the defendants were free to make their own choice (or choices, not being limited to any one under the instruction) about hypotheses as to location, and to make the most of the most favorable hypothesis about precise location.

## VIII.

■ I turn next to the request for an evidentiary hearing. The request for an

evidentiary hearing at which defendants' attorneys would be permitted to cross-examine government agents—and perhaps the government trial attorneys in this case as well—about their motives in asserting a contention before the court during trial has distinctively serious implications for the adversary system of adjudication in which all attorneys are officers of the court and charges of fraud on the court made by one officer of the court against another officer of the court must be a matter of grave concern. I understand the affidavit of counsel and defense memoranda before me at this time, however, as making the charge of fraud on the court not against the attorneys who represented the government at trial but instead against the FBI agents who served as their trial advisers. In determining the present motion, I therefore do not address the distinctive issues that would be presented by a charge of fraud made by one officer of the court against another officer of the court, appearing in the same trial, and likely to involve the testimony of one or both at any evidentiary hearing required to determine the validity of the charge and, if it was determined not to be valid, whether the person making the charge nevertheless had an objectively reasonable basis for making it.

### IX.

In relation to the request for evidentiary hearing, it is significant that the evidentiary hearing requested would not be concerned with potential harm but instead with the good faith of government agents.

Before granting any evidentiary hearing —and especially one in which defense counsel wish to examine government agents, and perhaps government counsel as well, about the motives for their presenting a contention to the court at trial—a court should first consider what relief is sought and what are the legal prerequisites to allowance of that relief.

Defense counsel argue, first, that bad faith assertion of the qualified immunity should be treated as a *per se* violation of defendants' rights justifying a new trial without regard to whether any harm may have resulted. No precedent supports this contention, however. Indeed, even if a *purpose* "to invade the defense camp" is proved, a court must make some finding regarding likelihood of harm, or a determination based on failure to meet a burden of production or proof, before granting a sanction such as suppression of evidence. *E.g., Weatherford v. Bursey,* 429 U.S. 545, 558, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977) (Sixth Amendment violation requires showing of "realistic possibility of injury" to defendants or "benefit to the state"); *United States v. Mastroianni,* 749 F.2d 900, 907 (1st Cir.1984) (once defendant proves that confidential communications were conveyed as a result of government's presence at defense meeting, burden of proof shifts to government to show that there has been and there will be no prejudice to the defendants as a result of these communications).

In the alternative, defense counsel argues that harm did result because of the impairment of defendants' rights of confrontation and cross-examination.

Neither in the written submissions, however, nor at oral hearing (not even in response to a direct invitation of the court) have defendants called attention to any way in which the availability during trial of the information recently reported in the *Globe* might have led to a different trial strategy or a different trial result.

As noted above, the evidentiary hearing requested would not be concerned with potential harm but instead only with the motives of government representatives and their alleged bad faith in asserting the qualified privilege. Where there is no suggestion of any particular way in which the availability at trial of the withheld information might have affected the outcome of the trial, I conclude that no basis is shown for the allowance of an evidentiary hearing to explore motives of government agents and representatives.

For these reasons, the request for evidentiary hearing is denied and the motion for new trial must also be denied.

## ORDER

For the reasons stated in the Memorandum of this date, it is ORDERED:

Defendants' Motion for New Trial is denied.